**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ARMINDA AYALA on Behalf of Herself and on Behalf of All Others Similarly Situated,** | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | **CIVIL ACTION NO. 1:22-CV-0059** |
| **ASSET PROTECTION & SECURITY SERVICES, L.P.,** | § § § § | |
| *Defendant*. | § § | |

**UNOPPOSED MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT SETTLEMENT**

Plaintiff Arminda Ayala ("Ayala" or "Plaintiff"), on behalf of herself and on behalf of all others who have joined this case as opt-in plaintiffs (the "Opt-in Plaintiffs," and collectively with Ayala, "Plaintiffs"), file this Unopposed Motion for Approval of Fair Labor Standards Act Settlement and would respectfully show the Court the following:

## I.     INTRODUCTION

Plaintiff and Defendant have reached a confidential settlement of their pending *bona fide* dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides compensation for alleged unpaid overtime claims to current and/or former employees who were alleged not to have been paid overtime wages for all hours worked over forty in a workweek.

On May 23, 2022, Plaintiff filed this collective action lawsuit. There were two primary claims raised by Plaintiff. First, Plaintiff alleged that Defendant failed to pay for certain pre-shift activities, including the time spent completing security screenings. Second, Plaintiff alleged that

Defendant failed to pay its workers for the time spent in meal periods that were for the benefit of Defendant.

After Plaintiff filed this lawsuit, other individuals joined this case by signing and returning a consent form. The consent form executed by the Opt-In Plaintiffs states as follows:

> I authorize the named Plaintiff to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff and Plaintiff's Counsel to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims, and I understand I will be bound be such decisions.

(Dkt. 9-1, 10-1, 15-1, 21-1, 29-1, 32-1, 33-1).

During the discovery period, the Parties exchanged significant discovery and other information as to the claims of the Plaintiff and Opt-in Plaintiffs and the defenses raised by Defendant. Defendant provided Plaintiffs' Counsel with pay data and time data for the Plaintiff and Opt-In Plaintiffs during the relevant time period covered by this lawsuit. With this information, the Parties calculated the potential damages they believed could be available to the Plaintiffs.

The Parties then attended mediation with Dennis Clifford, a mediator with extensive experience handling unpaid wage claims under the Fair Labor Standards Act. With the assistant of Mr. Clifford, the Parties reached a settlement. The final terms of the settlement are reflected in the Confidential Settlement Agreement and Release of Claims (the "Settlement Agreement"), which is attached hereto as Exhibit 1.[1]

---

[1] The Settlement Agreement is being submitted to the Court under seal given the confidential nature of the settlement.

## II. ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Some "[c]ourts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, many courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353. Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

Here, the Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case and resolves the claims of the Plaintiff and Opt-In Plaintiffs.

**A.     The terms of the settlement provide fair compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Opt-in Plaintiffs. The damages that were calculated were based upon records showing the amount paid to Plaintiff and each of the Opt-in Plaintiffs. The amount claimed to be owed during the statutory period was calculated for Plaintiff and each Opt-in Plaintiff for each week that they worked during the statutory period. The total amount claimed to be owed for each individual was then added together to determine the total alleged unpaid overtime wages for the Plaintiff and Opt-In Plaintiffs.

The settlement is fair and reasonable because the amount is greater than the amount they may have recovered during litigation on the two-year limitations period. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiffs prove willfulness – which is a higher standard. Here, the settlement provides for a recovery that is approximately 115% of the total amount of alleged unpaid overtime wages on the three-year limitations period at 15 minutes of unpaid work per shift.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiff argued that she and the Opt-in Plaintiffs were not paid for all hours worked. Defendant countered that Plaintiff and the Opt-in Plaintiffs were paid for all hours worked and that certain time for which Plaintiff and the Opt-in Plaintiffs sought compensation was not compensable time.

Further, the Parties disagreed as to whether the Plaintiff could satisfy her burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiffs could recover

damages for two (2) years or three (3) years prior to the date on which they joined this lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case. Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties.

Additionally, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for the payments identified in the Settlement Agreement, the Plaintiff and Opt-in Plaintiffs will agree to release Defendant from any and all wage and hour claims they may have.

**B.      The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement is fair to the Plaintiff and Opt-in Plaintiffs because it provides for a settlement for the Plaintiff and Opt-in Plaintiffs with damages calculated based upon the records for the Plaintiffs, with each Opt-in Plaintiff allocated a separate amount based upon his/her dates of employment and total pay.

The settlement allows each Opt-in Plaintiff to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Opt-in Plaintiffs in the aggregate, net of attorney's fees and costs. That is, hypothetically, if an Opt-in Plaintiff is owed $2,000 and the total settlement amount is $100,000, his/her proportionate share of the settlement is two percent (2%) and he/she will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Opt-in Plaintiff is set forth in the Settlement Agreement.

As part of the settlement, the Parties agreed to a Service Award for Plaintiff Ayala. Otherwise known as a "service payment" or "incentive award," this amount is in addition to her pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Opt-in Plaintiffs, the valuable contributions Ms. Ayala made throughout the litigation, particularly in its initial phases, Plaintiffs' Counsel submits that the incentive award is reasonable.

    **C.    The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

The Parties have agreed to self-administer this settlement. Defendant will mail to Plaintiffs' Counsel the individual settlement checks and Plaintiffs' Counsel will send the checks to the Plaintiffs along with a copy of the Notice attached to the Settlement Agreement as Exhibit B, which explains the key terms of the settlement and the Plaintiffs' release of claims. All Opt-in Plaintiffs will receive a payment from this settlement. The release of claims for the Opt-in Plaintiffs is a release of wage and hour claims only. This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

    **D.    The attorney's fees sought are fair and reasonable.**

Additionally, the amount sought by Plaintiffs' Counsel for attorney's fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers and thereby, to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).

1. **Plaintiffs' Counsel employed their expertise in the area of wage and hour litigation, to perform significant work that yielded a highly favorable result.**

Under the settlement, the Plaintiffs will receive a direct cash payment representing a recovery on their alleged claims for damages. There is no initial claims process that can dramatically decrease participation in the Settlement. Moreover, the settlement amount is approximately 115% of the potential back wages owed on the three-year limitations period at 15 minutes of uncompensated work each shift—this is a significant percentage of Plaintiffs' estimated damages given the facts of the case and the relative merits of, and risks related to, Plaintiffs' claims and Defendant's possible defenses.

When evaluating a claim for attorney's fees, **a party's success in the litigation is the "most critical" factor.** *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988-89 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under Plaintiffs' theory of the case, Plaintiffs' Counsel has prevailed in securing compensation for the Plaintiffs. Plaintiffs' Counsel acquired a settlement that provides a recovery to each Plaintiff. Under Defendant's theory, the Plaintiffs would be owed zero.

There can be no reasonable dispute that the settlement provides a fair and reasonable recovery to the Plaintiffs. Attached hereto as Exhibit "2"is the Declaration of Don Foty. (Exhibit "2.") During this case, Plaintiffs' Counsel engaged in discovery, reviewed personnel records, time

7

records, and pay records, calculated the potential damages, participated in mediation, and performed other work that resulted in a settlement. (*See id*.)  It is important to note that Plaintiffs' Counsel will continue to work on this case in the future.  Plaintiffs' Counsel will spend time fulfilling their obligations in the settlement, administering the settlement, and responding to the Plaintiffs' inquiries. (*See id*.)

Furthermore, the legal theories involved in this case required substantial expertise in the wage and hour field.  Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had viable claims.  Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Plaintiffs in this case.  Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs.  For these reasons, Plaintiffs' Counsel respectfully requests that the Court approve the settlement.

### 2. Plaintiffs' Counsel's contingency fee interest is consistent with those approved by courts in the Fifth Circuit.

Plaintiffs' Counsel undertook representation in this case on a contingency fee basis with a 40% interest.  A 40% contingency fee interest is regular and customary in Fair Labor Standards Act collective actions such as this case. *See, e.g.*, *Sarabia v. Spitzer Indus., Inc*., No. Civ. A. 4:17-CV-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (Ellison, J.) (approving 40% and stating that a 40% fee "is in line with that approved in other FLSA cases.").  In fact, courts in the Fifth Circuit regularly approve a 40% contingency fee to the plaintiff's counsel. *See id*.; *see also., Sterling v. Greater Hous. Transp. Co., et al*., No. Civ. A.: 4:20-cv-00910 (S.D. Tex. Apr. 19, 2022) (Dkt. 150) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA collective action); *Green-Johnson v. Fircroft*, et al., No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013) (Rosenthal, J.) (approving 40% fee award to plaintiff's counsel in FLSA case); *Hamilton v.*

8

*Enersafe, Inc.*, No. Civ. A. 5:15-CV-965-JKP, 2020 WL 12029225 (W.D. Tex. Feb. 7, 2020) (same); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013) (Doc. 71); (same); *Covey, et al. v. Iron Cactus, et al.;* No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. Aug. 6, 2013) (same); *Sandras v. Expeditors & Prod. Serv. Co.*, No. Civ. A. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019) (same); *Venable v. Am. Consulting & Testing, Inc.*, No. Civ. A. 6:20-CV-1232 (W.D. La. Feb. 25, 2022) (same); *Ellis v. Baptist Mem'l Healthcare Corp.*, No. Civ. A. 3:18-CV-73-SA-JMV, 2021 WL 1206408 (N.D. Miss. Mar. 30, 2021) (same); *Karim v. Finch Shipping Co.*, Ltd. 233 F. Supp. 2d 807, 811 (E.D. LA 2002) (same).

Contingency fee interests provide a benefit to workers and there is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Plaintiffs' Counsel took on this matter to represent the Plaintiffs in their work claims against Defendant and litigated this case for approximately 2.5 years against experienced Defense Counsel. Given that Plaintiffs' Counsel undertook the representation on a purely contingent basis, Plaintiffs' Counsel has borne all of the risk of loss, including the prospect of later dispositive motions or unfavorable outcomes at trial or on appeal, and that the investment of substantial attorney time and resources towards the case would be lost. *See, e.g.*, *Herrod v. Kijakazi*, No. 4:20-CV-73-DAS, 2023 U.S. Dist. LEXIS 162254, *3 (N.D. Miss. Sept. 13, 2023) ("The fact of a contingency agreement warrants an enhanced fee."). Indeed, "[t]here is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011); *see also Hermes Health All., LLC v. Certain Underwriters at Lloyd's*, No. 20-1654, 2022

U.S. Dist. LEXIS 71320, *10 (E.D. La. Apr. 18, 2022) (contingency fee contract "promotes access to needed legal services for those without means to afford the risk of financial loss").

Further, had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success or compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at great risk of non-payment despite working on this case for 2.5 years. This risk of non-payment strongly supports the amount requested here.

Finally, the attorney's fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

### E. The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, her counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 n.10 (E.D. La. Sept. 23, 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement amount, the Parties engaged in negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this Settlement represents fair value for the Plaintiffs. Each of the Plaintiffs will receive payment for their alleged damages under federal law without the risk or expense of continued litigation or trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.   CONCLUSION

The terms of the settlement have been approved by Plaintiff, her counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

*/s/ Don J. Foty*_____
Don J. Foty
Hodges & Foty, LLP
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone: 713.523.0001
Facsimile: 713.523.1116
Email: dfoty@hftrialfirm.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on December 30, 2024 which will forward a copy to Defendant.

*/s/ Don J. Foty*_____
Don J. Foty

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with Counsel for Defendant and Defendant is unopposed to the relief sought in this Motion.

*/s/ Don J. Foty*_____
Don J. Foty